## Norfolk

ERNEST STERLING WRIGHT

v.

COMMONWEALTH OF VIRGINIA

No. 0147-85

Decided August 19, 1986

COUNSEL

James T. Wood, for appellant.

Lucy H. Allen, Assistant Attorney General (William G. Broaddus, Attorney General, on brief), for appellee.

OPINION

**KEENAN, J.**—In a bench trial, Ernest Wright was convicted of petit larceny and possession of marijuana. He received concurrent jail sentences of twelve months and thirty days, respectively. Two issues are presented in this appeal: (1) whether the trial court erred in admitting evidence of Wright's home address taken by a police officer before advising him of his *Miranda* rights, and (2) whether the evidence was sufficient to support both convictions. Finding that the evidence of Wright's address was properly admitted, and that the evidence was sufficient to convict him of the charges, we affirm both convictions.

Prior to his arrest, Wright was a security guard at Outdoor World, a campground in James City County. His job included responsibility for the security of promotional gifts located in a shed on the premises. On December 12, 1983, the project director, Frederick F. Smartley, IV, discovered that the shed had been broken into and that Bentley television sets, grandfathers clocks, and Corningware dishes were missing. The serial numbers of the items taken were not recorded.

Approximately one month later, the police executed a search warrant at the home of Wright's mother. In a bedroom she identified as being Wright's, the police found a Bentley television and a

Bentley grandfathers clock. The police also seized another Bentley television and a Bentley camera which they found in a living room closet. From underneath Wright's bed, the police seized a plastic bag containing thirty small bags of marijuana.

Three days later, the officers returned to the same address with an arrest warrant. Wright was found asleep in the bedroom where most of the items seized during the search were found. He was arrested and brought to the police station. His fingerprints were taken by Officer Bramen, who wrote on the fingerprint card biographical information furnished to him by Wright. One piece of information listed on the card was that Wright's residence was 119 Colby Road, the home of his mother. This information was furnished by Wright prior to his being given *Miranda* warnings.

At trial, the fingerprint card was introduced into evidence without objection. Wright's counsel then objected to the information regarding Wright's address on the ground that it was obtained in violation of *Miranda*. The motion was overruled. The trial court also received evidence that Wright's fingerprints were found on two of the thirty plastic bags containing marijuana found in his bedroom.

The director of Outdoor World identified the property seized by the police as being the same brand, type and model as those items missing from the Outdoor World shed. He was unable, however, to specifically identify the items at trial as being those taken from the shed.

Wright argues that the trial court erred in holding that the police were not required to give him *Miranda* warnings prior to obtaining biographical information from him. This information was received after his arrest pursuant to fingerprinting procedures which included placing his name, address, height, weight and other biographical data at the top of the card on which the fingerprints were placed. Wright contends that the obtaining of this information constituted custodial interrogation and that he should have first been given *Miranda* warnings.

The Commonwealth contends that information received by police in routine processing after an arrest is not subject to *Miranda* scrutiny. It further argues that the information obtained here was a result of routine processing, rather than an improper attempt to

obtain incriminating information, because pursuant to Code §
19.2-390, the police were required, after arresting Wright, to obtain his fingerprints and make a report of his arrest to the Central
Criminal Records Exchange. The card used was a form provided
by the Federal Bureau of Investigation.

■ The term "interrogation" under *Miranda* does not include
words or actions by the police which are normally attendant to
arrest and custody. *Rhode Island* v. *Innis*, 446 U.S. 291, 301
(1980). In *South Dakota* v. *Neville*, 459 U.S. 553 (1982), the
Supreme Court held that a police officer's inquiry whether a suspect would take a blood-alcohol test was not "interrogation"
within the meaning of *Miranda*. The Court stated:

> [P]olice words or actions "normally attendant to arrest and
> custody" do not constitute interrogation. The police inquiry
> here is highly regulated by state law, and is presented in virtually the same words to all suspects. It is similar to a police
> request to submit to fingerprinting or photography.

*Id.* at 564 n.15.

Under the facts presented here, we believe that Wright's statement concerning his address was obtained as a result of conduct
normally attendant to arrest and custody. We also note the total
absence of any evidence that the questioning here was intended or
designed to produce an incriminating response. For these reasons,
*Miranda* warnings were unnecessary. *United States* v. *Glen-Archila*, 677 F.2d 809, 815 (11th Cir.), *cert. denied*, 459 U.S. 874
(1982); *United States ex. rel. Hines* v. *LaVallee*, 521 F.2d 1109,
1112-13 (2d Cir. 1975).

■ Wright next argues that the evidence was insufficient to
support his conviction for petit larceny and possession of marijuana. In reviewing these convictions, we examine the evidence in
accordance with the standard set forth in *Higginbotham* v. *Commonwealth*, 216 Va. 349, 218 S.E.2d 534 (1975):

> Where the sufficiency of the evidence is challenged after conviction, it is our duty to consider it in the light most
> favorable to the Commonwealth and give it all reasonable
> inferences fairly deducible therefrom. We should affirm the
> judgment unless it appears from the evidence that the judg-

ment is plainly wrong or without evidence to support it.

*Id.* at 352, 218 S.E.2d at 537.

Wright contends that the Commonwealth failed to establish that the items found at his mother's home were the items missing from the Outdoor World shed. He notes that the Outdoor World director could not say exactly how many items were missing from the shed and could not identify the items seized as having come from the shed. Wright also argues that the Commonwealth failed to establish his constructive possession of the items. We find no merit in either of these arguments.

The goods found in Wright's bedroom matched the general description of the items which were missing from the Outdoor World shed. Although they could not be precisely identified as being the missing items, this was not required under the facts of this case. In *Henderson* v. *Commonwealth*, 215 Va. 811, 213 S.E.2d 782 (1975), the court held that "when an accused is found in possession of goods of a type recently stolen, strict proof of identity of the goods is not required." *Id.* at 813, 213 S.E.2d at 783. In the case before us, the items were identified by brand name and model. In accordance with *Henderson*, since Wright was found in possession of property of a type recently stolen, we find that it was not necessary for the goods to have been identified by serial number or with further precision than appears from the record before us.

The facts also demonstrated that Wright was in recent, exclusive and unexplained possession of the goods found in his bedroom. At the time the search warrant was executed, Wright's mother identified his bedroom to the police. Wright contends that this testimony by Detective Linhart was inadmissible hearsay. However, since this testimony was elicited on cross-examination, and the record does not show that counsel specifically objected to Detective Linhart's response or requested that the court strike this testimony, we will not consider this argument on appeal. Rule 5A:18.

Because some of the items missing from Outdoor World were found in a private area of the home occupied by the defendant, the trier of fact was permitted to find that they were in his exclusive constructive possession. *See Castle* v. *Commonwealth*, 196

Va. 222, 227, 83 S.E.2d 360, 363 (1954). Further, the one month time lapse between when the items were discovered missing and when they were found in Wright's bedroom is sufficiently brief to be construed as recent possession. *Montgomery v. Commonwealth*, 221 Va. 188, 190, 269 S.E.2d 352, 353 (1980). Therefore, we find that the evidence was sufficient to convict Wright of petit larceny.

■ We turn now to examine the sufficiency of the evidence of possession of marijuana. In order to be convicted of this charge, the evidence must show that Wright was aware of the presence and character of the controlled substance. *Clodfelter v. Commonwealth*, 218 Va. 619, 622, 238 S.E.2d 820, 822 (1977). Further, he may be deemed to have constructive possession of the substance if it was subject to his dominion and control. *Woodfin v. Commonwealth*, 218 Va. 458, 460, 237 S.E.2d 777, 779 (1977).

The facts before us support the trial court's conclusion that Wright possessed the marijuana. The marijuana at issue was found in Wright's bedroom underneath his bed. While he was not in actual possession of the substance at the time of its seizure, constructive possession may be inferred from its presence under his bed, combined with the evidence of his fingerprints on two of the plastic bags containing the marijuana. Therefore, we find that the evidence was sufficient to convict Wright of this charge.

In summary, we hold that the police were not required to give Wright *Miranda* warnings before obtaining routine, biographical data from him, and that the evidence was sufficient to convict Wright of both petit larceny and possession of marijuana. Accordingly, the judgment of the trial court is affirmed.

*Affirmed.*

Koontz, C.J., and Baker, J., concurred