## CIRCUIT COURT OF LOUDOUN COUNTY

Commonwealth of Virginia

v.

Francis Lewis, Jr.

October 13, 1989

Case No. (Criminal) 6316

By JUDGE JAMES H. CHAMBLIN

At the conclusion of the presentation of the evidence at the trial of the above case on September 6, 1989, the Court took under advisement the defendant's motion to suppress and motion to strike.

Set forth below are the Court's findings of facts and the reasons for concluding that both motions should be granted.

In this bench trial the defendant is accused of driving after having been declared to be an habitual offender. During the presentation of the Commonwealth's evidence defense counsel moved to suppress certain evidence. Because it was not a jury trial, the Court continued to hear the evidence and received it both on the suppression motion and on the merits. After the Commonwealth rested, the Court denied the defendant's motion to strike. The defendant put on no evidence and renewed his motion to strike which was taken under advisement along with the motion to suppress.

Prior to going on duty on November 12, 1988, Officer R. D. Frye of the Leesburg Town Police learned that there was a capias outstanding for the arrest of the defendant on a failure to appear charge. Officer Frye knew the defendant from previous contacts with him.

While on duty Officer Frye observed the defendant operating a motor vehicle eastbound on Market Street in the Town of Leesburg. Officer Frye pulled in behind the defendant's vehicle and activated his emergency equipment. Immediately the defendant signaled a right turn and pulled into a parking lot. Officer Frye did not attempt to articulate any reason for the stop related to the operation of the vehicle by the defendant. The defendant was stopped because Officer Frye knew who he was and knew that there was a capias outstanding for his arrest. This was not a traffic stop.

Officer Frye pulled his cruiser behind the defendant's vehicle. He got out of the cruiser and approached the driver's side of the vehicle. When he saw that the driver was the defendant, he placed him under arrest on the capias.

After placing the defendant under arrest, Officer Frye asked the defendant if he had an operator's license. The defendant replied that he did not have one and that it had been taken away. Officer Frye then asked the defendant for his social security number so that he might radio his dispatcher to check the status of the defendant's license. The defendant gave Officer Frye his social security number. The officer radioed his dispatcher and subsequently learned that the defendant had been previously adjudged an habitual offender. This led to the arrest of the defendant on the present charge.

At no time did Officer Frye advise the defendant of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).

Officer Frye did not know the defendant's social security number until he asked the defendant for it. He had no paperwork on the defendant that indicated the defendant's social security number. Officer Frye did not know that the defendant had been adjudged an habitual offender until he was told by his dispatcher.

No evidence was presented by the Commonwealth that an inquiry as to the social security number of a person arrested was normally part of arrest and custody or a part of the booking and processing procedure. Further, no evidence was presented by the Commonwealth that it is a custom or procedure of the Leesburg Town Police or the Loudoun County Sheriff's Department to check the operator license status of all persons placed under arrest.

The defendant argues that once he was arrested on the capias he was "in custody" for purposes of *Miranda*; and, because he was not given the warnings required by *Miranda* his responses to Officer Frye's questions should be suppressed. And, further, the defendant argues that the evidence subsequently obtained by the police (that the defendant had been declared a habitual offender) should be suppressed as "fruit of the poisonous tree" under *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407 (1963). I agree with the reasoning of the defendant.

The defendant was definitely in custody (he had been formally arrested on the outstanding capias) when Officer Frye asked him about his operators license and, subsequently, for his social security number. *Berkemer v. McCarty*, 468 U.S. 420, 104 S. Ct. 3138 (1984), does not apply because this was not a routine traffic stop. Also, it does not matter that the defendant was not in custody because of the present charge. *See Orozco v. Texas*, 394 U.S. 324 (1969). It certainly was not a stop under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968).

The Commonwealth may argue that the questions asked by Officer Frye did not constitute interrogation because such words or actions are "normally attendant to arrest and custody." *See Rhode Island v. Innis*, 446 U.S. 291, 100 S. Ct. 1682 (1980); *Wright v. Commonwealth*, 2 Va. App. 743 (1986). However, the Commonwealth offered no evidence that it is routine police procedure to ask a person arrested for his operator's license or for his social security number or to check his driving record. I feel that as soon as the defendant told Officer Frye that his operator's license had been taken away, Officer Frye asked for the social security number for the purpose of obtaining an incriminating response or using the number, once obtained, for the purpose of acquiring incriminating information about the defendant. The Commonwealth has not presented evidence that the questions asked were "normally attendant to arrest and custody." I find that Officer Frye's questions amounted to interrogation under *Miranda*.

Officer Frye learned that the defendant had been adjudged a habitual offender as a direct result of the defendant's responses. Such evidence is tainted by the *Miranda* violation, and is "fruit of the poisonous tree" under *Wong Sun*. Accordingly, the Commonwealth has the

burden of showing that there is no causal connection between the *Miranda* violation and the offered evidence that the defendant has been adjudged a habitual offender.

As set forth in *Bacigal, Va. Crim. Proc. (2d ed.) Sect. 6-4*, there are three recognized ways in which the Commonwealth can show lack of taint or causal connection. However, in this case I do not feel that the Commonwealth has shown any of the three. First, the very short period of time between the defendant's responses and the acquisition of the habitual offender information negates any assertion of attenuation or dissipation of the tainted evidence by passage of time. There was no evidence of any intervening circumstances. Second, there was no evidence that the tainted evidence was obtained from a source independent of *Miranda* violation. Third, there was no evidence to satisfy the "inevitable discovery" rule. There was no evidence to show: (1) a reasonable probability that the tainted evidence would have been discovered by lawful means but for the *Miranda* violation, (2) that any leads making the discovery inevitable were possessed by the police at that time of the *Miranda* violation, or (3) that at the time of the defendant's interrogation the police were actively pursuing an alternate line of investigation. *See Warlick v. Commonwealth*, 215 Va. 263 (1974); *Nix v. Williams*, 467 U.S. 431, 104 S. Ct. 2501 (1984).

For the foregoing reasons, the defendant's responses to Officer Frye's questions are suppressed, the attested copy of the order declaring the defendant to be a habitual offender is not admitted into evidence, and the defendant's second motion to strike is granted.

The charge against the defendant is dismissed, and a judgment of acquittal is entered.