COURT OF APPEALS OF VIRGINIA

Present: Judges Coleman, Bumgardner and Lemons
Argued at Salem, Virginia


RONALD GILES, JR.
                                        OPINION BY
v.        Record No. 1374-97-3    JUDGE SAM W. COLEMAN III
                                        DECEMBER 1, 1998
COMMONWEALTH OF VIRGINIA

            FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
                    Porter R. Graves, Jr., Judge

            A. Gene Hart, Jr. (A. Gene Hart, Jr., P.C.,
            on briefs), for appellant.

            Daniel J. Munroe, Assistant Attorney General
            (Mark L. Earley, Attorney General, on brief),
            for appellee.



     Ronald Giles, Jr. was convicted by a jury of robbery and use
of a firearm in the commission of a felony.  The sole issue on
appeal is whether the trial court erred in denying Giles's motion
to suppress his confession.  Giles contends police officers
obtained his confession in violation of his Fifth Amendment right
to counsel.  For the reasons that follow, we affirm the trial
court's conviction.

                        I.  BACKGROUND

     Giles was arrested for armed robbery of a motel.  After
Giles's arrest, Investigator Knott, intending to interrogate
Giles, advised him of his Miranda rights.  Giles asked to speak
with an attorney, whereupon Knott terminated the interview.
Immediately thereafter, Knott took Giles into an adjoining room
and turned him over to Officer Royer for booking.  Officer Knott
said to Royer, "He's ready to go," and Knott then left the

building.

As the booking began, Officer Royer asked Giles if he had spoken with the investigator about the charges; Giles responded: "Yes, but I don't understand, I'm confused." Royer explained to Giles that he had an arrest warrant for robbery and was being "booked" for robbery. Giles expressed further confusion and exclaimed, "Robbery?" At that point, Officer Royer asked Giles if he wanted Investigator Knott to "come back over and talk to [him]." Royer further stated: "Investigator Knott, he could come back over here and talk to you, they want to talk to you. They can clear you up from the matter, or if you know anything about it, they'd like to talk to you about it." Giles responded, "Yeah, I'll talk to them."

Approximately ten minutes after Officer Knott left, he was summoned to return to the station. Upon return, Knott again advised Giles of his Miranda rights, including his right to counsel, and obtained from Giles a signed written waiver. Thereafter, Giles made incriminating statements that were introduced at trial.

## II. ANALYSIS

The Fifth Amendment guarantees that "[n]o person . . . shall be compelled to be a witness against himself." U.S. Const., amend. V. The United States Supreme Court has recognized that "an inability to protect the right [against self-incrimination] at one stage of a proceeding may make its

invocation useless at a later stage." Michigan v. Tucker, 417 U.S. 433, 440-41 (1974). Prior to the Miranda decision, whether a confession was voluntary turned upon a factual determination of whether the statement had been knowingly and freely given. A court would examine the totality of the circumstances surrounding an accused's interrogation to determine whether the resulting confessions had been given voluntarily and of the accused's own free will. See id. at 441. However, in Miranda the Court expressly declared, for the first time, that the privilege against self-incrimination applied directly to station house interrogations "and that a defendant's statements might be excluded at trial despite their voluntary character under traditional principles." Id. at 443. Miranda addressed the interrogations of four defendants performed in isolated rooms in various police stations while the defendants were held incommunicado. See Miranda v. Arizona, 384 U.S. 436, 491-98. The Court described the station house atmosphere as generating "`inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely.'" Illinois v. Perkins, 496 U.S. 292, 296 (1990) (quoting Miranda, 384 U.S. at 467). The prophylactic Miranda protections apply to all interrogations where the degree of restraint is equivalent to arrest or a station house confinement. See Duckworth v. Eagan, 492 U.S. 195, 203 (1989) (citing Rhode Island v. Innis, 446 U.S. 291, 291

(1980)).

Among the prophylactic measures <u>Miranda</u> grants an accused is the right to counsel during a custodial interrogation.  <u>See</u> <u>Miranda</u>, 384 U.S. at 470-79.

> [T]he Lawyer is the one person to whom society as a whole looks as the protector of legal rights of [the accused] in his dealings with the police and the courts.  For this reason, the Court fashioned in <u>Miranda</u> the rigid rule that an accused's request for an attorney is <u>per</u> <u>se</u> an invocation of his Fifth Amendment rights, requiring that all interrogation cease.

<u>Fare v. Michael C.</u>, 442 U.S. 707, 719 (1979).

Recognizing that police may exploit the inherently coercive environment of a custodial interrogation in order to obtain a facially voluntary waiver from an accused who has previously asserted his right to counsel, the Supreme Court formulated the "<u>Edwards</u> Rule."  <u>See</u> <u>Edwards v. Arizona</u>, 451 U.S. 477, 484-87 (1981); <u>Quinn v. Commonwealth</u>, 25 Va. App. 702, 710-11, 492 S.E.2d 470, 474-75 (1997).  Under <u>Edwards</u>, once an accused asserts the right to counsel, all interrogation must cease until counsel is present, or until the accused initiates further discussion or interrogation.  <u>See</u> <u>Arizona v. Roberson</u>, 486 U.S. 675, 680-82 (1988); <u>Quinn</u>, 25 Va. App. at 711, 492 S.E.2d at 475.

Once an accused asserts his or her right to counsel, subsequent waiver of that right is not sufficient to make admissible any incriminating statements thereafter obtained, even if investigators have re-<u>Mirandized</u> the accused, unless the

-4-

statements are initiated by the defendant and shown to be based on a knowing, intelligent, and voluntary waiver.  See Edwards, 451 U.S. at 484-87 (holding that although officers advised him of his rights immediately prior to the interrogation, Edwards's waiver of his previously invoked right was invalid); Roberson, 486 U.S. at 678-82 (finding an invalid waiver where the accused, who had invoked his right to counsel, made incriminating statements when he was later approached by another officer and fully advised of his rights).  Once an accused invokes his right to counsel

> then it is presumed that any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation, is itself the product of the "inherently compelling pressures" and not the purely voluntary choice of the suspect.  As JUSTICE WHITE has explained, "the accused having expressed his own view that he is not competent to deal with the authorities without legal advice, a later decision at the authorities' insistence to make such a statement without counsel's presence may properly be viewed with skepticism." Michigan v. Mosely, 423 U.S. 96, 110, n.2 (1975) (concurring in result).

Roberson, 486 U.S. at 681.  Only if the accused initiates further "communication, exchanges, or conversations with the police," and only if those communications result in the accused changing his or her mind and freely and voluntarily waiving the right to counsel, may the police resume interrogation without violating the Edwards rule.  See id. at 682.

We have recognized and applied a three-part analysis to

evaluate the admissibility of a statement under the Edwards rule. See Quinn, 25 Va. App. at 712, 492 S.E.2d at 475. First, the trial court must determine whether the accused "unequivocally" invoked his or her right to counsel. Second, the trial court must determine whether the accused, rather than the authorities, initiated further discussions or meetings with the police. Third, if the accused did initiate further discussions or conversations with police, the trial court must then ascertain whether the accused knowingly and intelligently waived the previously invoked right to counsel. See id.; Smith v. Illinois, 469 U.S. 91, 94-95 (1984).

In reviewing the trial court's denial of the motion to suppress, we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences deducible therefrom. See Shears v. Commonwealth, 23 Va. App. 394, 398, 477 S.E.2d 309, 311 (1996). Although we review the trial court's findings of historical fact only for "clear error," we review de novo the trial court's application of defined legal standards to the facts of the case. See id. Whether the defendant invoked his or her right to counsel, and thereafter knowingly and voluntarily waived that right, requires that we apply defined legal standards to the historical facts. See Quinn, 25 Va. App. at 712-13, 492 S.E.2d at 475-76.

Because the Commonwealth concedes that Giles properly invoked his right to counsel, the first element of the Edwards

inquiry is not at issue.  Therefore, we determine de novo whether, under the facts viewed in the light most favorable to the Commonwealth, Giles initiated the discussion which resulted in this confession and whether after the initiation he freely and voluntarily waived his right to counsel.

First, Giles argues that the police failed to terminate the interrogation after he asserted his right to counsel.  Giles contends the police have a duty to inform other officers of an accused's invocation of his right to counsel, that the Edwards rule requires they ascertain, prior to interrogation, whether the accused has invoked his or her Miranda rights, and that an officer's ignorance does not relieve the officer from the duty to comply with the Edwards rule.  See Quinn, 25 Va. App. at 716-17, 492 S.E.2d at 477-78.  The evidence shows that Investigator Knott stopped interrogating Giles immediately after Giles invoked his right to counsel.  Giles contends, nevertheless, that Officer Royer's subsequent query -- "did you speak with the investigator?" -- constituted a virtually seamless continuation of Knott's interrogation and that Royer failed to honor his request for counsel.

We agree that, despite Officer Royer's lack of knowledge concerning Giles's request for counsel, Royer was obliged to comply with the Edwards prohibition on interrogation.  However, we find that the first question Royer posed did not qualify as interrogation.  Edwards does not prohibit routine communications

between the police and the accused.  See Foster v. Commonwealth, 8 Va. App. 167, 174, 380 S.E.2d 12, 16 (1989); Oregon v. Bradshaw, 462 U.S. 1039, 1045 (1983); see also Timbers v. Commonwealth, 28 Va. App. 187, 197-99, 503 S.E.2d 233, 237-38 (1998) (discussing routine booking exceptions).  In Bradshaw, the Court held that the accused's question, "well what's going to happen to me now?" initiated further conversation by the accused and, therefore, his subsequent waiver of his Miranda rights was valid.  See Bradshaw, 462 U.S. at 1045-47.  However, the Court cautioned that not every statement by an accused or an officer would constitute such an initiation.

> While we doubt that it would be desirable to build a superstructure of legal refinements around the word "initiate" in this context, there are undoubtedly situations where a bare inquiry by either a defendant or by a police officer should not be held to "initiate" any conversation or dialogue.  There are some inquiries, such as a request for a drink of water or a request to use a telephone, that are so routine that they cannot be fairly said to represent a desire on the part of the accused to open up a more generalized discussion relating directly or indirectly to the investigation.  Such inquiries or statements, by either an accused or a police officer, relating to routine incidents on the custodial relationship, will not generally "initiate" a conversation in the sense in which the word was used in Edwards.

Id. at 1045.  Accordingly, Officer Royer's question, "did you speak with the investigator?" was not an impermissible continuation of Officer Knott's interview.  The question was not coercive in nature and merely inquired about the status of the

investigation.  It was a question arising out of and during the routine incidents of the custodial relationship.

For the same reason, we reject Giles's second argument that Officer Royer, by asking the question concerning the status of the investigation, re-initiated the properly terminated interrogation.  As previously stated, Officer Royer's query regarding whether Giles had spoken with Investigator Knott did not go beyond the routine communications permitted by Edwards.  Similarly, because Officer Royer's explanation to Giles of the warrant for robbery was properly characterized as a routine "booking" communication, it also does not violate the Edwards standard.

Having addressed Officer Royer's initial statements, the next question is whether Giles's statements initiated the meeting with Knott.  The analysis depends on whether his statements "represent[ed] a desire . . . to open up a more generalized discussion relating directly or indirectly to the investigation."  Id.; see also Correll v. Commonwealth, 232 Va. 454, 462-64, 352 S.E.2d 352, 356-58 (1987) (applying the Bradshaw analysis).

Giles stated that he was confused, that he did not understand, and then expressed surprise that he was being charged with robbery.  These utterances by Giles fairly constituted an invitation for Officer Royer to discuss with Giles his situation.  Giles's surprise at the charges indicated a "desire on the part of the accused to open up a more generalized discussion relating

. . . to the investigation."  Moreover, Giles's comments were not necessary inquiries incidental to the booking and custodial relationship.  In response to Giles's expressed confusion, Royer asked if Giles wished to resume the discussion and interrogation with Officer Knott.  At that point, Giles indicated a desire to meet with Knott.

Previously, we recognized that under certain circumstances "`police legitimately may inquire whether a suspect has changed his mind about speaking to them without an attorney.'"  Foster, 8 Va. App. at 174, 380 S.E.2d at 16 (quoting Justice Powell's concurrence in Edwards, 451 U.S. at 490).  In Foster, the accused properly invoked his right to counsel but continued talking to the investigator.  We found that despite his request for counsel, the accused in Foster made apparent his intention to continue a dialogue with the officers and as such the accused "`evinced a willingness and a desire for a generalized discussion about the investigation.'"  Foster, 8 Va. App. at 174, 380 S.E.2d at 16 (quoting Bradshaw, 462 U.S. at 1045-46).

In view of the interaction between Giles and Royer, Royer's statement was a legitimate inquiry as to whether Giles had changed his mind.  Admittedly, after Giles initiated further discussion, Royer's response may have had a persuasive or coaxing effect on Giles:  "[T]hey want to talk to you.  They can clear you up from the matter, or if you know anything about it, they'd like to talk to you about it."  However, Giles had already

expressed a willingness to discuss the investigation and because, as a result of that conversation, he expressly agreed to meet with Knott, we find that Giles initiated the meeting with Knott.

Finally, we "`determine if the defendant knowingly and intelligently waived the right [to counsel] he had invoked.'" Quinn, 25 Va. App. at 712, 492 S.E.2d at 475 (quoting Smith, 469 U.S. at 95). "His waiver must be evaluated in view of the totality of circumstances, including his background and experience and the conduct of the police." Correll, 232 Va. at 464, 352 S.E.2d at 357. "'[A]ny evidence the accused was threatened, tricked or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege.'" Foster, 8 Va. App. at 173, 380 S.E.2d at 16 (quoting Miranda, 384 U.S. at 476).

No evidence suggests that the officers failed to honor Giles's request for counsel. Officer Knott ceased the interview immediately after Giles invoked his right to counsel. By expressing surprise at the charge of robbery, Giles initiated the dialogue with Royer that resulted in his agreement to resume the interview with Officer Knott. When Royer asked whether Giles wanted to meet with Knott, despite the fact that Royer's comments during the discussion may have influenced Giles's request to resume the interview, Royer's comment did not initiate the discussion and, furthermore, it did not constitute an attempt to trick, threaten, or cajole Giles. Only after Giles expressed a

willingness to waive his right to counsel and to speak with Officer Knott did Officer Royer, instead of proceeding with interrogation, recall Knott and remand Giles to his custody. Knott again advised Giles of his right to remain silent and right to counsel and obtained a signed written waiver.  We find that Knott obtained a valid waiver from Giles of his right to counsel during their second meeting.

Accordingly, we affirm the convictions.

Affirmed.