THE COURT OF APPEALS OF VIRGINIA


Present:  Judges Humphreys, Clements and Agee
Argued by teleconference


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
v.    Record No. 0344-02-1          JUDGE ROBERT J. HUMPHREYS
JULY 15, 2002
MICHAEL ANTHONY MORRIS


FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG AND
COUNTY OF JAMES CITY
Samuel Taylor Powell, III, Judge

Jennifer R. Franklin, Assistant Attorney
General (Jerry W. Kilgore, Attorney General,
on brief), for appellant.

Patrick Kelley (Richard E. Hill, Jr.; David
Holland's Law Group, L.L.C., on brief), for
appellee.


The Commonwealth of Virginia appeals a ruling of the trial

court suppressing evidence pertaining to the indictments of

Michael Anthony Morris for six counts of rape and one count of

taking indecent liberties with a child by a person in a

supervisory or custodial relationship.  Specifically, the

Commonwealth contends the trial court erred in suppressing Morris'

voluntary statements to police.  Morris noted a cross-appeal

pertaining to the same issue.  For the reasons that follow, we

reverse and remand.

_____

* Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

I.   BACKGROUND

On October 4, 2001, Morris contacted Detective William Lawson, with the Williamsburg Police Department, and told him "he wanted to turn himself in in [sic] Richmond," for charges that had been filed against him in Williamsburg.  Accordingly, Morris was served with arrest warrants, arrested by Richmond police, and taken before a Richmond magistrate.  Shortly thereafter, Morris was released into the custody of Detective Lawson and Lieutenant Smith to be transported to Williamsburg.

During the trip, Detective Lawson advised Morris of his Miranda rights.  Morris responded "I think I need to talk to my lawyer."  Accordingly, Detective Lawson and Lieutenant Smith immediately terminated their conversation with Morris. A few moments later, the officers' Deputy Chief contacted them on Smith's car phone, which was on speaker mode, and stated that they were considering bringing an additional charge against Morris. Lieutenant Smith then informed the Deputy Chief that Morris said he wanted to talk with a lawyer.  Morris overheard the entire conversation.  When the call ended, Morris began asking the officers about the additional charge.  They told him they did not know what it was.

When the three men arrived at the Williamsburg police department, the officers placed Morris in an interrogation room so that Detective Lawson could complete Morris' Miranda form, as well as some additional paperwork, instead of taking Morris directly to

-

the jail. Detective Lawson testified that he could have completed the paperwork at the jail, but placed Morris in the interrogation room so that he could leave him alone while he was working on the paperwork, but still monitor him via the video surveillance system in the room.[1] He claimed that his Deputy Chief was a "stickler" for paperwork and "like[d] to have those things in writing" "for [their] case files."[2]

While Lieutenant Smith was in his office working, Detective Lawson entered the interview room and explained the Miranda waiver form to Morris, telling him that he had "already verbally explained to him his Miranda rights traveling back from Richmond and this form – [he] wanted to complete this form in order to document [his] paperwork." Detective Lawson then read the five statements at the top of the form to Morris, which consisted of the standard Miranda warnings, including the statement, "You have the right to talk to a Lawyer and have him present with you while you are being questioned." Morris initialed the five statements, and stated, "Well, what if I want to talk now?" Detective Lawson

---

[1] The evidence presented to the trial court established that the recording equipment linked to the surveillance system, which was used to record Morris' subsequent statement, was not activated at this time.

[2] In its oral argument, the Commonwealth conceded that there was no legal requirement that Morris execute the police department's Miranda form or any of the additional unidentified "paperwork."

-

asked Morris the last two questions on the form: "1.  Do you understand each of these rights I have explained to you? 2.  Having these rights in mind, do you wish to talk to us now?" Morris initialed "Yes," in response to each question.

Detective Lawson then left the room to ask Lieutenant Smith to sit in on the interview.  Smith set the video monitoring system to record the interview before returning to the room with Detective Lawson.

When the two officers arrived in the room, they found that Morris had written the word "yes" next to the statement on the Miranda form informing him of his right to speak with a lawyer. Neither officer was sure when Morris had made the notation.[3] Lieutenant Smith thus asked Morris to confirm that he had changed his mind and wanted to speak to the officers without counsel. Morris nodded in the affirmative.  He then stated, "But I do like to have an attorney.  I mean I read the memorandum and it said I can have one present."  Smith agreed and informed Morris that an attorney would advise him to "shut [his] mouth."  He then offered to "stop now and just take [Morris] to jail and serve all the papers."

---

[3] Although not noted in the transcript, the videotape clearly indicates that Morris picked up a pen and made a notation on the rights form after Detective Lawson had left the interview room and moments before he returned with Lieutenant Smith.

However, Morris continued asking questions about the charges against him.  Morris asked about the details of the charges and the sentence he would be exposed to.  He asked whether the State would be easier on him if he cooperated, and inquired as to whether he would be sent to a maximum-security prison, expressing his concern that "rapists" get killed in prison.  Additionally, Morris asked if his wife could be charged and stated she did not know anything about the matter.  The officers informed Morris that they could not ask him any questions, but answered Morris' questions.  After several minutes of this conversation, Morris acknowledged that he did not have a lawyer and stated that he did not want one.  He subsequently signed a waiver form and gave a full confession.[4]

Morris was thereafter indicted on six counts of rape and one count of taking indecent liberties with a child by a person in a supervisory or custodial relationship.  On December 11, 2001, Morris filed a motion to suppress his confession contending the officers' questioning violated his constitutional rights.

---

[4] We note that the video recording of the interview, as well as a transcript of the video recording, although referred to repeatedly by the prosecutor and subsequently offered as exhibits by the defense without objection by the Commonwealth, were not actually admitted as exhibits but "[were] made a part of the record" after the court announced its ruling. Accordingly, we consider both the videotape and the transcript as part of the record on appeal.

The trial court held a hearing on the motion on December 18, 2001.  After reviewing the evidence, the trial court issued its ruling on January 25, 2002.  The court held as follows:

> [t]he Court will make the following finding: number 1, the defendant was in custody; number 2, during the transportation from Richmond to the City of Williamsburg he was read his Miranda rights; during that time he requested an attorney; all questioning stopped; he was taken to the police department where questioning resumed, i.e., the police initiated contact by asking a series of paperwork questions, more particularly asking him to complete the Miranda forms in writing which led to additional questioning.
>
> The Court is of the opinion that that [sic] was improper, that he was in custody, he exercised his Miranda rights, and that he did not initiate the additional contact while he was – additional discussion that took place, he was without legal counsel.
>
> And considering the totality of the circumstances the Court finds the Miranda rule was violated.  Accordingly, the statement would not be admissible.  The Court will suppress the statement.
>
> The Court will further rule that the statement was knowingly, intelligently, and voluntarily made; it was fully voluntary, and accordingly could be used for impeachment purposes if necessary.  So I grant your motion to suppress.

## II.  ANALYSIS

On appeal, the Commonwealth argues the trial court erred in sustaining Morris' motion to suppress, relying upon Edwards v. Arizona, 451 U.S. 477 (1981) and its progeny, as "the police did not initiate a new interrogation by asking him to complete routine

-

paperwork." Morris cross-appeals, contending that the police improperly initiated interrogation after he had invoked his right to counsel.

On review of the trial court's ruling granting a motion to suppress, the appellate court views the evidence in the light most favorable to the defendant, the prevailing party below, and grants him all reasonable inferences fairly deducible from that evidence.[5] "Although we review the trial court's findings of historical fact only for 'clear error,' we review de novo the trial court's application of defined legal standards to the facts of the case."[6]

As a basic premise, in compliance with Miranda v. Arizona, 384 U.S. 436 (1966), officers must inform the accused of his right to remain silent and his right to an attorney, court appointed if necessary, before a custodial interrogation may take place.

> Included among the safeguards established in Miranda is the right of a suspect to have counsel present at any custodial interrogation and to terminate the interrogation by invoking this right. In order for a defendant's statement to be admissible at trial, the Commonwealth must prove that the defendant was informed of his Miranda right to counsel, i.e., that he has the right to consult with a lawyer, to have the lawyer present during interrogation and

---

[5] Russell v. Commonwealth, 33 Va. App. 604, 535 S.E.2d 699 (2000); Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).

[6] Giles v. Commonwealth, 28 Va. App. 527, 532, 507 S.E.2d 102, 105 (1998) (citation omitted).

-

that, if the defendant is indigent, a lawyer will be appointed to represent him. If the interrogation continues without the presence of an attorney, the defendant's statement is inadmissible unless the Commonwealth proves by a preponderance of the evidence that the defendant voluntarily, knowingly, and intelligently waived his right to retained or appointed counsel.

In order to "prevent police from badgering a defendant into waiving his previously asserted Miranda rights" and to "protect the suspect's 'desire to deal with the police only through counsel,'" the United States Supreme Court established the "Edwards rule" as a "second layer of prophylaxis for the Miranda right to counsel."[7]

Pursuant to Edwards and its progeny, once the defendant invokes his Miranda right to counsel, all police-initiated interrogation regarding any criminal investigation must cease unless the defendant's counsel is present at the time of questioning. If the police initiate interrogation of a defendant after he has invoked his Miranda right to counsel and before his counsel is present, "a valid waiver of this right cannot be established . . . even if he has been advised of his rights."[8]

Whether the Edwards rule renders a statement inadmissible is determined by a three-part inquiry. First, the trial court "must determine whether the accused actually invoked his right to counsel" and whether the defendant remained in continuous custody

---

[7] Quinn v. Commonwealth, 25 Va. App. 702, 710-12, 492 S.E.2d 470, 474-75 (1997) (citing Davis v. United States, 512 U.S. 452, 458 (1994); McNeil v. Wisconsin, 501 U.S. 171, 176 (1991); Michigan v. Harvey, 494 U.S. 344, 350 (1990)).

[8] Id. (citing Edwards, 451 U.S. at 484; Eaton v. Commonwealth, 240 Va. 236, 252, 397 S.E.2d 385, 395 (1990); Hines v. Commonwealth, 19 Va. App. 218, 221, 450 S.E.2d 403, 404 (1994)).

-

from the time he or she invoked this right to the time of the statement. Second, if the accused has invoked his or her right to counsel and has remained in continuous custody, the statement is inadmissible unless the trial court finds that the statement was made at a meeting with the police that was initiated by the defendant or attended by his lawyer. Third, if the first two parts of the inquiry are met, the trial court may admit the statement if it determines that the defendant thereafter "knowingly and intelligently waived the right he had invoked."[9]

As an initial point, the Commonwealth assumes, without conceding, that Morris unequivocally invoked his right to counsel when he stated "I think I need to talk to my lawyer."[10] Nevertheless, the officers treated Morris' statement as an unequivocal request for a lawyer as they terminated further conversation with him at that point. Further, the trial court found that Morris' statement was intelligently, knowingly and voluntarily made, a finding which neither party disputes. Thus, it is only the second prong of the Edwards test at issue on appeal.

In this regard, the trial court found that the officers' questioning of Morris resumed after they arrived at the police station and placed him in the interrogation room. Specifically,

---

[9] Id. (citing Smith v. Illinois, 469 U.S. 91, 96 (1984)).

[10] The Commonwealth states that they have maintained this position throughout the proceedings. Indeed, we find that the trial court has not rendered a ruling on this precise issue. Accordingly, we do not address it on appeal.

-

the court held that, after Morris had invoked his right to counsel while in the car, "the police [improperly] initiated the contact [with Morris] by asking a series of paperwork questions . . . which led to additional questioning."

However, we have held that "'police do not impermissibly "initiate" renewed interrogation by engaging in routine conversations with suspects about unrelated matters.'"[11] Thus, "'[p]olice words or actions "normally attendant to arrest and custody" do not constitute interrogation,' although the police may not ask questions, even during booking,[12] that are designed to elicit incriminatory admissions."[13]

Here, the officers ceased any conversation with Morris as soon as he purportedly invoked his right to counsel. However, instead of taking him to the jail, they placed him in an interrogation room at the police department to complete their paperwork associated with his arrest. As part of that process,

---

[11] Foster v. Commonwealth, 8 Va. App. 167, 174, 380 S.E.2d 12, 16 (1989) (citing Edwards, 451 U.S. at 490).

[12] Moreover, to the extent that the trial court's holding suggests that "paperwork" attendant to the booking procedure may constitute improper questioning on the part of police, we note that we have specifically recognized a routine booking question exception in Virginia, "'which exempts from Miranda's coverage questions to secure the biographical data necessary to complete booking or pretrial services.'" Watts v. Commonwealth, 38 Va. App. 206, 215-16, 562 S.E.2d 699, 703-04 (2002) (quoting Pennsylvania v. Muniz, 496 U.S. 582, 601 (1990)).

[13] Id. (citing Wright v. Commonwealth, 2 Va. App. 743, 746, 348 S.E.2d 9, 12 (1986); South Dakota v. Neville, 459 U.S. 553, 564 n.15 (1983); Muniz, 496 U.S. at 602 n.14).

-

they asked Morris to complete a <u>Miranda</u> waiver form that was standard documentation their supervisor routinely expected them to complete.

Moreover, the officers testified that Morris was placed in the interrogation room only so that he could be monitored while the officers were in their respective offices, or were otherwise not in the room with him.  The officers asked no questions of Morris concerning the offenses, nor was there any evidence to suggest that the officers' actions were designed or intended to elicit an incriminating response from Morris.[14]

Indeed, the officers re-entered the room with Morris only after he indicated to Detective Lawson he wanted "to talk" and initialed a written statement that he wished to talk with them. We have held that "police legitimately may inquire whether a suspect has changed his mind about speaking to them without an

---

[14] <u>Wright</u>, 2 Va. App. at 746, 348 S.E.2d at 12 (holding <u>Miranda</u> warnings unnecessary where information obtained as a result of conduct normally attendant to arrest and custody and noting "the total absence of any evidence that the questioning . . . was intended or designed to produce an incriminating response."); <u>see</u> <u>also</u> <u>Timbers v. Commonwealth</u>, 28 Va. App. 187, 196, 503 S.E.2d 233, 237 (1998) (holding that in order to determine whether actions of police are "reasonably likely to elicit an incriminating response," we must determine "whether an objective observer would view an officer's words or actions as designed to elicit an incriminating response.") (citing <u>Blain v. Commonwealth</u>, 7 Va. App. 10, 15, 371 S.E.2d 838, 841 (1988); <u>Rhode Island v. Innis</u>, 446 U.S. 291 (1980)).

-

attorney."[15]  This was clearly the situation in the case at bar.

The record demonstrates that the "additional questioning"

concerned only whether or not Morris actually wanted a lawyer

before speaking with the officers.  In fact, Morris only increased

the uncertainty of whether he invoked or waived his right to

counsel by writing "yes" by the question concerning his wish for

counsel (while Detective Lawson went to get Lieutenant Smith) and

then saying, "But I do like to have a lawyer."  The ensuing police

questions were clearly asked to determine what Morris actually

wanted:  counsel or no counsel.  At no point did the police

interrogate Morris about the criminal charges.  Instead, they

merely sought to clarify his contradictory oral and written

statements as to his desire for counsel.

Further, the record conclusively demonstrates that it was

Morris, and not the officers, who began any substantive discussion

by asking numerous questions concerning the offenses.  The

officers simply provided Morris with truthful responses to his

questions, while properly reminding him that they could not ask

him any further questions if he chose to maintain his choice to

proceed with counsel.  Thus, it was Morris who initiated the

additional conversation concerning the offenses by "represent[ing]

---

[15] Foster, 8 Va. App. at 174, 380 S.E.2d at 16 (citing Edwards, 451 U.S. at 490).

-

a desire . . . to open up a more generalized discussion relating directly or indirectly to the investigation."[16]

As set forth above and contrary to the trial court's ruling, police are not precluded from engaging in routine conversations with suspects and/or asking questions to clarify whether a suspect has changed his or her mind about wanting a lawyer and such inquiries do not amount to police-initiated interrogation within the meaning of Edwards.[17] Moreover, a suspect may render himself subject to further interrogation if he "initiates [the] further communication, exchanges, or conversations with the police."[18]

Therefore, even in viewing the facts in the light most favorable to the defendant, Morris, we find that the trial court erred in holding that the officers' conduct constituted an improper initiation of an interrogation following the exercise of a defendant's right to counsel during questioning by police. Accordingly, we reverse the decision of the trial court and remand with instructions to the trial court to vacate its order suppressing the relevant statements.

Reversed and remanded.

---

[16] Giles, 28 Va. App. at 535, 507 S.E.2d at 106 (citing Oregon v. Bradshaw, 462 U.S 1039, 1045 (1983)).

[17] See Bunch v. Commonwealth, 225 Va. 423, 434-35, 304 S.E.2d 271, 277 (1983).

[18] Edwards, 451 U.S. at 484-85.

-