COURT OF APPEALS OF VIRGINIA


Present:    Judges Kelsey, Petty and Senior Judge Clements
Argued by teleconference


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
v.        Record No. 0390-09-2                      JUDGE WILLIAM G. PETTY
                                                    JULY 21, 2009

EDDIE JAMES EDWARDS


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
T. J. Markow, Judge

Rosemary V. Bourne, Assistant Attorney General (William C. Mims,
Attorney General, on briefs), for appellant.

Cassandra M. Hausrath, Assistant Public Defender (Office of the
Public Defender, on brief), for appellee.


The Commonwealth appeals the trial court's determination that Eddie James Edwards'[1]

Miranda rights were violated, and the resulting suppression of his statement to the police.  The

Commonwealth argues that Edwards never made an unequivocal assertion of his right to counsel,

but also contends that the detectives "nevertheless terminated the interview, but the defendant

thereafter reinitiated communication with the police."  As explained in this opinion, although we

agree with the trial court that Edwards unequivocally invoked his right to counsel, we also agree

with the Commonwealth that Edwards later reinitiated communication with the police and properly

waived his Miranda rights.  Accordingly, we reverse the judgment of the trial court.


---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Edwards is charged with one count of robbery in violation of Code § 18.2-58, two
counts of using a firearm in the commission of a felony in violation of Code § 18.2-53.1, one
count of attempted murder in violation of Code § 18.2-32, and two counts of discharging a
firearm within an occupied dwelling or building in violation of Code § 18.2-279.

Because the parties are fully conversant with the record in this case and this memorandum opinion carries no precedential value, we recite only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal. We view those facts and incidents in the "light most favorable" to Edwards, as the prevailing party below, Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003), and we grant to him all fair inferences flowing therefrom, Coleman v. Commonwealth, 52 Va. App. 19, 21, 660 S.E.2d 687, 688 (2008). We note that the parties do not dispute the facts concerning Edwards' interaction with the police. The facts relevant to this determination appear in the record in both a DVD of the officers' interview with Edwards, which we viewed, and a transcription of that interview.

In addressing the substantive issues of this appeal, we review the trial court's findings of fact for clear error, and review *de novo* the trial court's application of defined legal standards to the particular facts of this case. See Ornelas v. United States, 517 U.S. 690, 697 (1996); Shears v. Commonwealth, 23 Va. App. 394, 398, 477 S.E.2d 309, 311 (1996).

A criminal suspect has the right to have an attorney present during custodial interrogation. Miranda v. Arizona, 384 U.S. 436, 469-73 (1966). In Edwards v. Arizona, 451 U.S. 477 (1981), the Court "extended the principles set forth in Miranda to subsequent interrogation," Commonwealth v. Gregory, 263 Va. 134, 146, 557 S.E.2d 715, 722 (2002), by holding that, after a suspect "expressed his desire to deal with the police only through counsel," interrogation must cease until either his counsel has been made available to him or until "the accused himself initiates further communication, exchanges, or conversation with the police." Edwards, 451 U.S. at 484-85. If the accused makes a "custodial confession" during an interrogation, that confession is inadmissible at trial unless the accused was advised of, and

- 2 -

waived, his Fifth Amendment rights: including the presence and assistance of counsel during custodial interrogation. <u>Missouri v. Seibert</u>, 542 U.S. 600, 608 (2004).

To determine the admissibility of a statement under the <u>Edwards</u> rule, we apply a three-part analysis. The first step in this analysis is determining "whether the accused unequivocally invoked his or her right to counsel." <u>Giles v. Commonwealth</u>, 28 Va. App. 527, 532, 507 S.E.2d 102, 105 (1998). The second step is to "determine whether the accused, rather than the authorities, reinitiated further discussions or meetings with the police" after that invocation. <u>Id.</u> The third step in our analysis is to determine whether, after the accused reinitiated communication with the police, he made a "knowing and intelligent waiver" of the previously invoked right to counsel. <u>Id.</u>; <u>see also</u> <u>North Carolina v. Butler</u>, 441 U.S. 369 (1979).

### I. Invocation

Initially, we determine that Edwards clearly invoked his right to counsel. Where, as here, there is no dispute regarding the content of the accused's statements to the police, our "'appellate consideration of the circuit court's denial of [the defendant's] motion to suppress is restricted to a de novo review of the legal issue whether [his] words, taken in context, were sufficient to invoke his right to counsel.'" <u>Zektaw v. Commonwealth</u>, 278 Va. 127, 135, 677 S.E.2d 49, ___ (2009) (alterations in original) (quoting <u>Commonwealth v. Hilliard</u>, 270 Va. 42, 50, 613 S.E.2d 579, 584 (2005)).

An accused's words are legally sufficient to invoke his right to counsel when they express a request for counsel that is "clear, unambiguous, and unequivocal." <u>Id.</u> at 136, 677 S.E.2d at ___ (citing <u>Davis v. United States</u>, 512 U.S. 452, 469 (1994)). A request for counsel is "sufficiently clea[r]" when "a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." <u>Id.</u> Our Supreme Court has explored the types of requests that are sufficiently clear on many occasions. <u>See id.</u> at 136-37, 677 S.E.2d at ___ (collecting cases).

Most recently, our Supreme Court held that an accused's statement "Right, and I'd really like to talk to a lawyer because this—oh my God, oh my Jesus, why?" was a sufficiently clear invocation of his right to an attorney during custodial interrogation because (1) his request was made shortly "after he completed his rights waiver form and came as a response to [an officer's] question for him to tell his side of the story"; (2) the accused was not "asking the police to clarify his rights"; (3) his request was not for a person other than a lawyer; (4) he "did not state he might want an attorney"; and (5) his statement did not express a mere "'reservation about the wisdom of continuing the interrogation without consulting a lawyer." Id. at 138, 677 S.E.2d at ___ (internal quotation marks and citations omitted).

Here, Edwards talked with the police for some period of time and requested that his mother be present at various times during the interrogation. However, at one point, Edwards said: "I'm [sic] just want to see a lawyer." One of the interrogating officers replied, "Okay," and Edwards continued, "I do want to talk to y'all though but I just want to see a lawyer, I don't want y'all to go nowhere. Is that asking too much?" At that point, the officers explained that all discussions with them would cease, and would only recur when Edwards' attorney was present. One of the officers explained to Edwards that, based on his statements, the officer had "to assume that you prefer to have a lawyer [here] and not [talk] to us now because we can't go back and forth, man. Cause [sic] if you want to talk to us you talk to us, if you don't that's fine, we're fine with it either way." The officers left the room for approximately two minutes, and upon their return began asking Edwards routine booking questions.

Based on all of the totality of the circumstances related above, we conclude that the statement "I'm [sic] just want to see a lawyer . . . I do want to talk to y'all though but I just want to see a lawyer, I don't want y'all to go nowhere. Is that asking too much?" was sufficiently clear to invoke Edwards' right to counsel. Edwards' statement was unequivocal—he stated that he wanted

to see a lawyer. And, while Edwards asked whether it was "asking to much" for the officers to remain in the room, that statement does not undo his prior invocation of counsel. Like Zektaw's petition to the Almighty, Edwards' question to the officers did "not withdraw or negate the [earlier] clear assertion of his right to counsel . . . ." Id. at 139, 677 S.E.2d at ___.

## II. Reinitiation

Our inquiry does not, however, end with the determination that the accused invoked counsel. Instead, having established the first step of the Edwards test, we move on to the second: whether the accused reinitiated the communication with the police that eventually led to his confession. After the invocation of the right to counsel, "further interrogation of the accused should not take place 'unless the accused himself initiates further communication, exchanges, or conversations with the police.'" Oregon v. Bradshaw, 462 U.S. 1039, 1045 (1983) (plurality opinion) (quoting Edwards, 451 U.S. at 485). This is "a prophylactic rule, designed to protect an accused in police custody from being badgered by police officers . . . ." Id.; see also Montejo v. Louisiana, 129 S. Ct. 2079, 2085 (2009). Accordingly, "before a suspect in custody can be subjected to further interrogation after he requests an attorney there must be a showing that the suspect himself initiates dialogue with the authorities." Bradshaw, 462 U.S. at 1045 (internal quotation marks and citations omitted).

In Bradshaw, the Supreme Court concluded that the accused's question, "well, what's going to happen to me now?" reinitiated further conversation with the police. 462 U.S. at 1045-46. But, not every statement by an accused or an officer signals the resumption of communication:

> "While we doubt that it would be desirable to build a
> superstructure of legal refinements around the word 'initiate' in
> this context, there are undoubtedly situations where a bare inquiry
> by either a defendant or by a police officer should not be held to
> 'initiate' any conversation or dialogue. There are some inquiries,
> such as a request for a drink of water or a request to use a
> telephone, that are so routine that they cannot be fairly said to
> represent a desire on the part of the accused to open up a more

> generalized discussion relating directly or indirectly to the
> investigation. Such inquiries or statements, by either an accused or
> a police officer, relating to some incidents on the custodial
> relationship, will not generally 'initiate' a conversation in the sense
> in which the word was used in Edwards."

Giles, 28 Va. App. at 534, 507 S.E.2d at 106 (quoting Bradshaw, 462 U.S. at 1045).

Here, after Edwards invoked his right to counsel, the officers moved on from interrogating him to asking him routine booking questions, which is, of course, permissible. See Watts v. Commonwealth, 38 Va. App. 206, 215, 562 S.E.2d 699, 704 (2002) ("'Police words or actions normally attendant to arrest and custody do not constitute interrogation.'" (quoting Wright v. Commonwealth, 2 Va. App. 743, 746, 348 S.E.2d 9, 12 (1986))); see also Foster v. Commonwealth, 8 Va. App. 167, 174, 380 S.E.2d 12, 16 (1989) (noting that Edwards does not prohibit routine communication between a suspect and police officers). During the booking process, Edwards asked whether he would be entitled to bond; how much "time" he was likely to serve; whether he would have a jury; and once again asked for his mother. While the officers responded to Edwards' inquiries, they did not ask him any questions other than routine booking questions at that time. However, at one point during the booking process Edwards said, apropos of nothing, "What [sic] me to tell you the story, what really happened? You wanna [sic] know? You can hear me, right?" When the police officer, who was completing the booking paperwork, did not respond, Edwards said, "I say what you want me to say, you gotta [sic] ask the questions so I can go head get it over with man . . . ." It was only then that the interrogation resumed.

We hold that Edwards' statements to the police offering to tell his story and inviting the officers to "ask the questions" evidence "a desire . . . to open up a more generalized discussion relating directly or indirectly to the investigation." Bradshaw, 462 U.S. at 1045. Edwards' statements were completely unrelated to the booking process, and were motivated by his desire "get it over with" and "[see his] little nephews before they get [sic] 30 years old." Moreover, as the trial

court found, there is no indication in the record that the officers badgered Edwards into reinitiating conversation with them. Indeed, the officer with whom Edwards was speaking was so engrossed in the booking paperwork that he had to ask Edwards to repeat himself when Edwards began to give his statement. Accordingly, we hold that Edwards reinitiated communication with the police.

### III. Waiver

Finally, as the third step in our Edwards analysis, we must decide whether the accused knowingly and intelligently waived his previously invoked right to counsel. Giles, 28 Va. App. at 535, 507 S.E.2d at 105. Here, while the trial court found that the police did not engage in any coercive behavior[2] during the interrogation, it also found that Edwards did not "knowingly or intentionally waiv[e] his right to an attorney . . . ." Whether a waiver "was made knowingly and intelligently is a question of fact, and the trial court's resolution of that question is entitled on appeal to a presumption of correctness." Harrison v. Commonwealth, 244 Va. 576, 581, 423 S.E.2d 160, 163 (1992). Thus, the issue on appeal is whether the evidence, viewed in the light most favorable to Edwards, supports this finding. In reviewing this issue, "we must review the entire exchange between appellant and the officers." Rashad v. Commonwealth, 50 Va. App. 528, 536, 651 S.E.2d 407, 411 (2007) (citing Medley v. Commonwealth, 44 Va. App. 19, 37, 602 S.E.2d 411, 417 (2004) (*en banc*) (noting that a court must consider the totality of the circumstances before properly determining whether Miranda rights have been waived)).

While this case does not involve an express waiver of Miranda rights after Edwards reinitiated communication with the police, it is well settled that "waiver can be clearly inferred

---

[2] This case is therefore distinguishable from our Supreme Court's recent decision in Commonwealth v. Ferguson, 276 Va. 118, 677 S.E.2d 45 (2009). That decision turned on the officers' coercive behavior: "Whatever the significance of Ferguson's comments that broke the silence, they were the product of the coercive interrogation and environment created by police. Surely, police may not use the product of such techniques as proof of a voluntary reinitiation of communication and subsequent waiver of the right to counsel." Id. at 125, 677 S.E.2d at ___.

from the actions and words of the person interrogated." Butler, 441 U.S. at 373; see also Harrison, 244 Va. at 584, 423 S.E.2d at 165. This inference must be made on "the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." Butler, 441 U.S. at 374 (citations omitted). A waiver is knowing and intelligent when it is made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Rodriguez v. Commonwealth, 40 Va. App. 144, 156, 578 S.E.2d 78, 83 (2003).

The facts of this case, even viewed in the light most favorable to Edwards, do not support the trial court's determination that Edwards' waiver was not knowing and intelligent. Edwards was twenty years old, had his GED, and had some familiarity with the criminal justice system. The record shows that the officers properly advised Edwards of his Miranda rights at the outset of the interview. The officers discussed his Miranda rights[3] with him, and he indicated that he understood those rights. Edwards then signed a waiver form signifying that he waived his rights. However, Edwards later invoked those rights—a fact that clearly establishes he understood the nature of his rights—and, interrogation ceased. After sitting and muttering to himself for several minutes while the officer who was still in the room was working on booking paperwork, Edwards reinitiated conversation with the officer because he wanted "to get it over with" and "[see his] little nephews before they get [sic] 30 years old." The record shows that all of this activity took place within approximately one hour.

Furthermore, this case does not involve some unclear or hesitant behavior on the accused's part in reinitiating communication with the police. See Wyrick v. Fields, 459 U.S. 42, 48 (1982)

---

[3] The officers explained Edwards' rights to him several times throughout the interview. After Edwards signed the waiver form, and before he invoked his right to have an attorney present, the officers stated the following: "Do you want a lawyer"; "Now, if you want a lawyer we get you a lawyer"; "We go stop, we ain't go talk to you no more, it's simple as that. If you don't want to talk to us and you want a lawyer we go stop right now [sic]."

("[T]he totality of the circumstances, *including the fact that the suspect initiated the questioning*, is controlling" when evaluating whether a waiver of <u>Miranda</u> rights was knowing and intelligent." (emphasis added)).  Edwards reinitiated communication with the officer by explicitly asking if the officer heard him, offering to tell him his story, and requesting that the officer ask him questions.  Thus, "as his dialog with the officers makes clear, there is no question that [Edwards] was aware of the nature of his [Fifth Amendment rights] and the potential consequences of abandoning [them]."  <u>Medley</u>, 44 Va. App. at 38, 602 S.E.2d at 420.  Even viewing the facts in the light most favorable to Edwards, the evidence does not support a conclusion that Edwards made anything but a knowing and intelligent waiver of his <u>Miranda</u> right to have an attorney present.

Based on the foregoing discussion, we conclude that while Edwards unequivocally invoked his Fifth Amendment right to counsel during custodial interrogation, he reinitiated communication with the police and voluntarily, knowingly, and intelligently waived his right to counsel.  Therefore, we reverse the trial court's grant of Edwards' motion to suppress, and remand for further proceedings consistent with this opinion.

Reversed and remanded.