COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Petty and Senior Judge Willis
Argued by teleconference


COMMONWEALTH OF VIRGINIA

                                                        MEMORANDUM OPINION[*] BY

v.        Record No. 1932-06-1                JUDGE ROBERT P. FRANK
                                                          DECEMBER 28, 2006

CARL L. DESEI


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
A. Bonwill Shockley, Judge

Alice T. Armstrong, Assistant Attorney General II (Robert F.
McDonnell, Attorney General, on briefs), for appellant.

Charles B. Lustig (Lawrence H. Woodward, Jr.; Shuttleworth,
Ruloff, Giordano & Swain, P.C., on brief), for appellee.


Pursuant to Code § 19.2-398, the Commonwealth appeals the judgment of the trial court

granting Carl Desei's motion to suppress his statements to the police.  The Commonwealth contends

the Child Protective Services (CPS) worker's actions were not the "functional equivalent" of

interrogation designed to elicit incriminating statements by Desei.  Alternatively, the

Commonwealth argues that it was Desei, and not government authorities, who initiated the

exchange that resulted in Desei's incriminating statements.  For the reasons stated, we reverse the

judgment of the trial court and remand for further proceedings.

BACKGROUND

Detective Neives of the Virginia Beach Police Department arrested Desei on one charge of

taking indecent liberties with a minor, in violation of Code § 18.2-370(A)(1), and two charges of

taking indecent liberties with a minor, in violation of Code § 18.2-370(A)(3).  At the time of his

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

arrest, Neives read Desei the warnings pursuant to <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).  Desei responded that he "wanted his attorney."  Neives contacted Desei's attorney, who told Neives not to speak to his client.

Neives, accompanied by Virginia Beach Department of Human Services CPS workers Megan Revis and Kristin Kovak,[1] took Desei to central processing for booking.  Desei appeared before a magistrate, who denied him bond.

While Neives was in the magistrate's office completing paperwork to process Desei in the jail, Revis approached Desei and introduced herself.  She gave Desei a pamphlet entitled "Virginia Cases About Children and Their Families."  Revis completed the last page of the pamphlet, filling in Desei's name, the allegations, and the name of the victim.  She also completed the appropriate blanks with her name, agency, and telephone number.

The pamphlet advises the victim's family and the alleged perpetrator, *inter alia*, of the investigative procedures for a CPS complaint, the disposition of CPS reports, the procedure for appealing a CPS finding, and the right to review the report.  Revis characterized the meeting with Desei as "a very routine procedure" mandated by department policy.[2]  Revis testified that she did not ask Desei any questions during this meeting.

---

[1] At the time of Desei's arrest, Revis was training Kovak to be a social worker with CPS.

[2] Code § 63.2-1516.01 provides, in part:

> The local department shall, at the initial time of contact with the person subject to a child abuse and neglect investigation, advise such person of the complaints or allegations made against the person, in a manner that is consistent with laws protecting the rights of the person making the report or complaint.

Further, the Virginia Administrative Code, 22 VAC 40-705-80 (2006), dealing with the Department of Social Services and Child Protective Services, requires, in relevant part:

> B.  During the course of the investigation, the child protective services (CPS) worker shall make and record in writing in the state automated system the following contacts and observations.  When any of these contacts or observations is not made, the CPS worker

She also advised Desei of the name of the victim and that he had the right to speak with Revis about the allegations. She gave Desei her phone number and "explained to him if he wanted to talk to me, that was how he could reach me." Revis also presented Desei with a "protective agreement," which is an agreement for Desei not to have any contact with the victim. Desei signed the agreement. Revis testified:

> While I was explaining [the protective agreement] to him, he began to ask questions about [R.M.], who was the alleged victim. How was he doing? What was going to happen to [R.M.]? Telling me how much he cared for [R.M.] and I explained to him that [R.M.] would have to go to therapy because -- that [R.M.] had disclosed that he had been harmed, and he wanted to know what that entailed, and I explained to him what that entailed -- about validation for victims is important in sexual abuse. In the meantime, Mr. Neives was filling out paperwork, because he had already -- [Desei] was not going home that night.

Revis reiterated that if Desei wanted to speak to her he could call her. Revis told Desei that, if he wanted her to talk only to his attorney, he must sign a release allowing her to share information with Desei's attorney.

Revis testified that as they were "leaving the jail house . . . [Desei said] wait, wait, wait. Don't leave. I want to talk to you." She stated:

> As we were leaving, he asked us to talk to us. He was reminded by -- a couple times he tried to talk to Detective Neives. He kept

---

> shall record in writing why the specific contact or observation was not made.
>
> \* \* \* \* \* \* \*
>
> 2. The child protective services (CPS) worker shall conduct a face-to-face interview with the alleged abuser and/or neglector.
>
>     a. The CPS worker shall inform the alleged abuser and/or neglector of his right to tape record any communication pursuant to § 63.2-1516 of the Code of Virginia.
>
>     b. The local department shall provide the necessary equipment in order to tape record the interview and retain a copy of the tape for the record.

telling him, I cannot talk to you; and then when we were leaving and he asked to talk to us, Detective Neives reminded him, as I reminded him, that he didn't -- he had a lawyer who told him not to talk to us; and he said, No, he wanted to. For [R.M.'s] sake, he wanted to talk to us.

Neives corroborated the testimony of Revis. Neives stated that while Revis was explaining the CPS process to him, Desei began to ask questions about the victim. Neives advised Desei that they could not talk to him about the incident because he had invoked his right to counsel. Desei persisted in asking questions, and Neives again told Desei that if he wanted to talk to them, he would have to waive his right to his attorney. Desei indicated that he wished to waive his rights. Neives contacted a Commonwealth's attorney, explaining the situation to him, and had someone bring him a <u>Miranda</u> rights waiver form. Revis retrieved a tape recorder from her car in order to record the interview. Approximately 15-20 minutes elapsed between Desei's first indication that he wished to waive his rights and the beginning of the taped interview.

At the outset of the interview, Desei was again advised of his <u>Miranda</u> rights. Desei received two waiver forms, one provided by Neives and one provided by Revis. Desei initialed by each of the rights as it was explained to him, and signed the bottom of both forms. Neives and Revis both testified that they did not promise Desei anything in exchange for his statements about the incident.

In granting the motion to suppress, the trial court found Revis to be a state actor who engaged in the "functional equivalent" of interrogation. The trial court determined that Revis initiated the contact with appellant "concerning the allegations against him." The trial court concluded in its written opinion:

> The statements made by Revis to Desei were not mandated by either Virginia statute . . . or Virginia Department of Social Services, Child Protective Services, regulation . . . indeed, these words and actions on the part of this state actor are not normally attendant to arrest and custody and a reasonable observer would view Revis [sic] statements as reasonably likely to and designed to

- 4 -

elicit an incriminating response from the suspect. Therefore, these statements must be suppressed as unlawfully obtained because the suspect did not re-initiate the conversation following the invocation of his Fifth Amendment rights.

This appeal follows.

ANALYSIS

The Commonwealth maintains that Revis had a legitimate reason, mandated by the Code of Virginia and by CPS administrative regulations, for approaching Desei and that her actions were similar to routine booking procedures. The Commonwealth argues that merely advising Desei of his statutory and procedural rights in a CPS investigation is not the "functional equivalent" of interrogation. Alternatively, the Commonwealth contends that Desei reinitiated contact with Revis and Neives after they terminated their discussion with him.

On appeal from a trial court's denial of a motion to suppress, the burden is on the appellant to show that the trial court's decision constituted reversible error. See Stanley v. Commonwealth, 16 Va. App. 873, 874, 433 S.E.2d 512, 513 (1993). We view the evidence in the light most favorable to the prevailing party, granting to it all reasonable inferences fairly deducible therefrom. See Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). We review the trial court's findings of historical fact only for "clear error," but we review de novo the trial court's application of defined legal standards to the particular facts of a case. See Shears v. Commonwealth, 23 Va. App. 394, 398, 477 S.E.2d 309, 311 (1996); see also Ornelas v. United States, 517 U.S. 690, 699 (1996).

The facts here are not in dispute. Thus, we determine de novo the issues before us.

Included among the safeguards established in Miranda v. Arizona, 384 U.S. 436 (1966), is the right of a suspect to have counsel present at any custodial interrogation and to terminate the interrogation by invoking this right. See Edwards v. Arizona, 451 U.S. 477, 485-86 (1981); Miranda, 384 U.S. at 469, 475. "[A]n accused . . . , having expressed his desire to deal with the

police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Edwards, 451 U.S. at 484-85.

Only if the accused initiates further "communication, exchanges, or conversations with the police," and only if those communications result in the accused changing his or her mind and freely and voluntarily waiving the right to counsel, may the police resume interrogation without violating the Edwards rule. Arizona v. Roberson, 486 U.S. 675, 682 (1988).

> Once an accused asserts his or her right to counsel, subsequent waiver of that right is not sufficient to make admissible any incriminating statements thereafter obtained, even if investigators have re-Mirandized the accused, unless the statements are initiated by the defendant and shown to be based on a knowing, intelligent, and voluntary waiver.

Giles v. Commonwealth, 28 Va. App. 527, 531, 507 S.E.2d 102, 105 (1998). The Commonwealth bears the burden of proving, by a preponderance of the evidence, that the defendant's waiver of counsel was voluntary, knowing, and intelligent. Colorado v. Connelly, 479 U.S. 157, 168 (1986).

In evaluating the admissibility of a statement under the Edwards rule, we apply a three-part analysis.

> First, the trial court must determine whether the accused "unequivocally" invoked his or her right to counsel. Second, the trial court must determine whether the accused, rather than the authorities, initiated further discussions or meetings with the police. Third, if the accused did initiate further discussions or conversations with police, the trial court must then ascertain whether the accused knowingly and intelligently waived the previously invoked right to counsel.

Giles, 28 Va. App. at 532, 507 S.E.2d at 105. Because the Commonwealth concedes that Desei properly invoked his right to counsel, the first element of the Edwards inquiry is not at issue

here.  Thus, we determine *de novo* whether Desei initiated the discussion that resulted in his statements to Neives and Revis.

To make such a determination, we must establish whether Desei's statements "represent[ed] a desire . . . to open up a more generalized discussion relating directly or indirectly to the investigation."  Oregon v. Bradshaw, 462 U.S. 1039, 1045 (1983).  "[I]nquiries or statements, by either an accused or a police officer, relating to routine incidents of the custodial relationship, will not generally 'initiate' a conversation."  Id.

The trial court held that, when Revis introduced herself to Desei and explained the procedures of the CPS investigation to him, this was the "functional equivalent" of an interrogation by Revis.  The trial court found that Revis initiated the discussion by approaching Desei and that no statute authorized Revis to talk to Desei once he invoked his right to counsel.[3]  Thus, the trial court ruled that, by initiating an interrogation of Desei, Revis had violated the Edwards rule and Desei's statements were suppressed.[4]

However, an examination of the record reveals that Desei made no incriminating statements during the initial conversation with Revis.  Revis introduced herself to Desei, explained the CPS procedures by going over a pamphlet she provided to Desei, and reviewed the contents of the "protective agreement" with Desei.  At that time, Desei asked Revis how the victim was doing, asked what could happen to the victim, and stated that he cared about the victim.  Desei inquired as to what therapy would entail for the victim, and Revis responded that "validation" for the victim would be important.  Revis concluded their conversation by advising

---

[3] Because of our holding today, we need not decide whether Revis had statutory authority to talk to Desei once he invoked his right to counsel.

[4] As the trial court found that the Commonwealth could not satisfy the second prong of the Edwards analysis, the trial court never made a determination as to the third prong, whether Desei knowingly and intelligently waived his previously invoked right to counsel.

Desei that he could contact her at the number she had provided on the CPS pamphlet if he had any questions for her. The interview ceased when Revis and Neives began to leave the jail.

At this point, Desei had made no statements to Revis or Neives that were incriminating. Because there were no statements to suppress as a result of this exchange, we need not address whether Revis's conduct during the first conversation was the "functional equivalent" of interrogation.[5] See Wilson v. Commonwealth, 45 Va. App. 193, 206, 609 S.E.2d 612, 618 (2005) (ruling that the court need not decide whether the officer's conduct in administering field sobriety tests violated the Fourth Amendment; the accused refused to submit to the tests, so there was no evidence that resulted from the officer's conduct to suppress); see also People v. Kinnard, 467 N.E.2d 886, 887 (N.Y. 1984) (holding that, where police officers unlawfully continued to question the accused after he had invoked his Miranda rights, this did not affect his later spontaneous confession, as the accused made no incriminating statements during the first interview, officers ended that interview, and the accused later initiated contact by indicating that he wanted to make a statement).

Clearly, Neives and Revis terminated their contact with Desei when they began to leave the jail. Desei recognized this termination, as he asked them not to leave because he wanted to talk to them. Neives repeatedly advised Desei that he could not talk to him without an attorney, yet Desei insisted on speaking with Neives and Revis without his attorney present. By persisting in his requests to talk to them, Desei reinitiated the contact with authorities that led to his incriminating statements. See Bradshaw, 462 U.S. at 1045-46 (holding that the accused, after invoking his right to counsel, reopened the dialogue with police officers by inquiring, "Well, what is going to happen to me now?"); King v. Commonwealth, 243 Va. 353, 362, 416 S.E.2d

---

[5] On remand, the trial court may consider the effect of Revis's contact with Desei on the voluntariness of Desei's waiver of his Miranda rights.

669, 673 (1992) (finding that the accused initiated the exchange with officers after invoking his right to counsel by asking why they were gathering evidence and by stating, "if you got questions, just ask me"); Foster v. Commonwealth, 8 Va. App. 167, 173-74, 380 S.E.2d 12, 15-16 (1989) (holding that the accused initiated the conversation with officers after invoking his right to counsel by continuing to assert his intent to talk to officers "no matter what his attorney advised").

Therefore, we find that Desei initiated the contact with Neives and Revis that resulted in his incriminating statements.

Because the trial court found that the government had initiated the contact with Desei, the trial court never reached the third prong of the Edwards analysis, namely whether Desei knowingly and intelligently waived his previously invoked right to counsel. See Quinn v. Commonwealth, 25 Va. App. 702, 714, 492 S.E.2d 470, 476 (1997) (holding that, because meeting was initiated by authorities after the accused had invoked his right to counsel, the Commonwealth was precluded from proving that a valid waiver of his rights occurred at that meeting). This is a question of fact that must be resolved by the trial court, based on the totality of the circumstances. See Harrison v. Commonwealth, 244 Va. 576, 581, 423 S.E.2d 160, 163 (1992) (holding that "the inquiry whether a waiver of Miranda rights was made knowingly and intelligently is a question of fact" based upon the totality of the circumstances that must be determined by the trial court). Thus, we must remand this case to the trial court for a determination of whether Desei, having initiated the dialogue with Revis and Neives, knowingly and intelligently waived his previously invoked right to counsel.

### CONCLUSION

We conclude the trial court erred in finding that the government initiated the contact with Desei and in granting Desei's motion to suppress. We reverse the judgment of the trial court and

- 9 -

remand for a determination of whether Desei knowingly and intelligently waived his previously invoked right to counsel.

Reversed and remanded.