COURT OF APPEALS OF VIRGINIA

Present:    Judges Kelsey, McCullough and Senior Judge Clements
Argued at Chesapeake, Virginia


STEPHEN JAMES FRANKLIN

v.        Record No. 1819-11-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE JEAN HARRISON CLEMENTS
NOVEMBER 6, 2012

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
William R. O'Brien, Judge[1]

T. Gregory Evans for appellant.

Eugene Murphy, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Stephen James Franklin (appellant) was convicted of aggravated malicious wounding in

violation of Code § 18.2-51.2(A) and unlawful wounding during the commission of a felony in

violation of Code § 18.2-53.  On appeal, he contends the trial court erred in:  (1) denying his

motion to suppress statements he made to police, and (2) finding his prosecution for both crimes

did not violate the Double Jeopardy Clause.  For the reasons that follow, we affirm his

convictions.

BACKGROUND

As the parties are fully conversant with the record in this case, and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Judge O'Brien accepted appellant's guilty pleas and entered the final conviction and
sentencing orders, but Judge A. Bonwill Shockley ruled on appellant's motion to suppress his
statements and motion that he was punished twice for the same offense.

incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal. On November 17, 2010, the trial court conducted a pretrial hearing relating to suppression and double jeopardy. The trial court denied both motions, and on April 5, 2011, appellant entered conditional guilty pleas to both crimes pursuant to Code § 19.2-254, thereby preserving his right to appeal those rulings.

Following appellant's guilty pleas, the parties stipulated that on August 21, 2010, at approximately 1:50 a.m., appellant approached Janelle Moore from behind and cut the left side of her throat with a sharp object. Moore was on the beach alone, talking on her cell phone when appellant attacked her. Unaware she had been cut, Moore threatened to call the police. Appellant cursed at her, knocked the phone out of her hand, and tackled Moore to the ground. A struggle ensued during which Moore lost her shoes and glasses. A nearby resident heard Moore scream, saw appellant on top of Moore and yelled at appellant, who fled the scene. Moore ran to the resident's home, at which time she realized she had been seriously wounded. Police arrested appellant, who "initially denied involvement but later admitted to being the man who attacked" Moore. Although appellant "denied hurting her intentionally, he wrote a letter to Ms. Moore, apologizing for what he had done."

In a statement to police, appellant admitted saying something to Moore on the beach and trying to grab her phone when she tried to call police, but he denied intentionally robbing her or trying to hurt her. Moore identified appellant at two court hearings as the man who confronted her on the beach and attacked her.

MOTION TO SUPPRESS

Appellant contends he clearly invoked his right to counsel, and the trial court erred in finding otherwise and in denying his motion to suppress his subsequent statements. He claims he

continually asserted his desire for counsel, and the detective continually interrogated him in violation of the Fifth Amendment.

"In reviewing a trial court's denial of a motion to suppress, 'the burden is upon [the defendant] to show that the ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)).

On August 26, 2010, Detective Laino interviewed appellant, who had earlier been advised of his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). The video-recorded interview was transcribed and reflected, in relevant part, the following exchange between Laino and appellant:

> DML [Laino]: Say you get five years for the malicious assault charge, and give you[ ] five year probation violation, they just say run the time concurrent.
>
> SJF [appellant]: Let me talk to my lawyer.
>
> DML: OK, is that what you want to do?
>
> SJF: Yeah.
>
> DML: OK, alright man, we're gonna take you back over to the magistrate's.
>
> SJF: I mean, I'm not trying to blow you off.
>
> DML: No, Dude, I understand 110%, it's your absolute right, um but I gotta job I gotta do myself.
>
> SJF: I know, can you hold on until I get the lawyer.
>
> DML: I gotta get the charges today, you know, do you have an attorney already?
>
> SJF: No, I'm trying to get a hold of someone, I don't have no phone numbers.
>
> DML: Stephen, like I said.

SJF:  I don't have no phone numbers so I can't contact nobody to talk to em.

DML:  What do you need phone numbers for?  In your phone?

SJF:  Yes.

DML:  Ok, well I can get phone numbers if you tell me who you need.

SJF:  I need Harold.

DML:  I've got Harold's number.

SJF:  Do you have his cell phone number, too?

DML:  He called me.

SJF:  What did he say?

DML:  I haven't had a chance to talk to him, been playing phone tag with him.  But, I got his number.

SJF:  He's at work.

DML:  Listen, I can't talk to you anymore.

SJF:  I'm trying to, I'm trying, because I really . . .

DML:  I got to ask you this . . . do you want to talk to me yes or no?

SJF:  Yes, I want to talk to you but I need to talk to somebody first.

DML:  Who do you need to talk to?

SJF:  I need to talk to Harold.

DML:  Ok, I will get you Harold's phone number and everything, but, I may have it in here, I'll get you a phone and let you talk to Harold.  But I need to know the truth first, the truth.

SJF:  I mean if you let me talk to him then I'll consider telling you, I mean, what I think happened.  Ok?

Laino explained to appellant he wanted to hear appellant's side of the story in order to determine what charges to bring and asked, "[D]o you want me to get a phone for you?"

- 4 -

Appellant said, "Yes please," and Laino left the interview room.  Laino returned nine minutes later, and the following exchange ensued:

> DML:  Alright man, I tracked down a phone.  We'll get you a phone call, I got Harold's number.  Dude, is it cold in here or is it just me?
>
> SJF: Yes, it's cold.
>
> DML:  Alright, cause you said you want an attorney and then you said you want to talk.
>
> SJF:  Let me find if I should get an attorney first.  That's all I'm saying.
>
> DML:  So you want to find out if you want to get an attorney first?
>
> SJF:  Yes.
>
> DML:  Alright, well let's go through this and then you tell me after you do whatever you need to do.
>
> SJF:  Ok.
>
> DML:  Fair enough?
>
> SJF:  That's fine.
>
> DML:  Ok.  We've already been through this a couple times.  We'll just go through it again.  You understand you have the right to remain silent.  Right, Right?
>
> SJF:  um huh.
>
> DML:  Anything you say can be used against you in court.  Right.
>
> SJF:  Right.
>
> DML:  You have the right to talk to a lawyer and have him being present while you are being questioned.
>
> SJF:  Right.
>
> DML:  If you cannot afford to hire a lawyer, one will be appointed to represent you for any questions you wish.  You understand that.  You can decide at any time to exercise these rights and answer any questions or make any statements.  You understand that right?
>
> SJF:  Uh huh.

> DML: Ok, just put your initials next to here, do you understand each of these rights as I explained to you. Yes or no? Just put your initial.
>
> SJF: Check yes?
>
> DML: Just put your initial. Ok, having these rights in mind do you wish to talk to us? And you can take that back after your phone call, if you decide you don't want to.
>
> SJF: Do I have to sign that now?
>
> DML: Uh, do you want to wait?
>
> SJF: Yea[h], can I wait to sign it.
>
> DML: Yeah, if you want to.
>
> SJF: Do you want me to sign this?
>
> DML: No, we'll just hold off. Ok, I'll leave this here for you.

Laino let appellant use the phone to call Harold. Laino asked if he should leave the room, and appellant said he did not care. Appellant spoke with Harold, after which Laino asked appellant if Harold wanted to speak with the detective since Harold called Laino earlier and left a message. Appellant asked Harold if he wanted to speak with Laino and handed the phone to Laino, who spoke with Harold. Laino told Harold he wanted to get appellant's side of the story before charging him. After the phone call, the following exchange took place between appellant and Laino:

> DML: Ok, I explained to [Harold] what's going on, you heard the conversation. Ah, you know, I'm in a situation where the last thing I want to do is the wrong thing. To some people it might be the right thing but in my heart I know it's not the appropriate thing. Uh, Stephen you are the same age as me, I'm 39 years old. You are a grown man. Uh - - .
>
> SJF: No, I did not attack the woman.
>
> DML: Ok, alright but so we we'll go through the rest of this with you. Having these rights in mind, do you wish to talk to me? Yes or no?
>
> SJF: What did [Harold] say I should do?

DML: He said you are a grown man, he said, I guess he told you that if you want you should get an attorney, but he's not gonna pay for an attorney or anything like that. He goes, but I can understand where you are coming from where you need to get his side of the story. Cause he said he appreciates me being honest with him and explaining the position I'm in. So this is where I'm at with that, and you heard what I told him, I don't want to put the wrong charges that don't need to be put.

SJF: Are you ready. I did not intentionally rob this woman or try to hurt her.

DML: Ok.

SJF: We were walking down the beach, I said something to her [and] she said something to me. Right, she said well I'm gonna call the police. I tried to grab the phone out of her hand, I had the beer bottle, it was the coozie or whatever it was in my hand.

DML: Well, was it one of those bottle cuzzies with a zipper on the side?

SJF: Yeah, yeah.

DML: Alright, then what happened?

SJF: I tried to knock the phone out of her hand. She screamed I ran, that's what happened.

DML: Ok.

The trial court ruled as follows:

I guess the first question is, as Mr. Evans said, whether there is a clear invocation of his right not to speak. And in reviewing the Redmond[2] case, I think we've come awful close; but I don't think we've crossed the line, so I'm going to rule that it is not -- well, it's an ambiguous statement and that therefore, as per the Commonwealth's argument, the sequence of events in Redmond after that track pretty closely with the sequence of events that we have here. And that seems to be the closest to the fact pattern that we have. So the motion to suppress the statement is denied.

In response to that ruling, appellant sought to "clarify" his position regarding "a number of other statements that [he] believe[d] . . . were also clear invocations of counsel," and he cited

---

[2] Commonwealth v. Redmond, 264 Va. 321, 568 S.E.2d 695 (2002).

and discussed statements he made on pages two, five, and eight of the transcribed conversation with Laino. The following discussion took place when appellant discussed a statement he made on page eight:

> MR. EVANS [for appellant]: Your Honor, just for the sake of the record, I want to go through the remaining ones. The other one we maintain is an invocation of counsel is on Page 8. All right. I'll try to get a lawyer. All right. Here. We maintain that was also an unequivocal request for counsel.
>
> THE COURT: Where are you on Page 8? Oh.
>
> MR. EVANS: It's after his initials. It's his - -
>
> THE COURT: Well, he's talking to Harold on the phone [when he said he'll try to get a lawyer].
>
> MR. EVANS: Correct.
>
> THE COURT: Okay.
>
> MR. EVANS: And it's your - -
>
> THE COURT: And we have - - and *then we have the signed waiver and his voluntary statement*.
>
> MR. EVANS: Just note I take exception to all of those rulings and also maintain that all of them together clearly form overall a clear invocation of counsel.
>
> THE COURT: Okay.

(Emphasis added).

"The issue whether a suspect invoked his right to counsel presents a mixed question of law and fact . . . ." Commonwealth v. Hilliard, 270 Va. 42, 49, 613 S.E.2d 579, 584 (2005).

> [I]n applying independent appellate review of the mixed question of law and fact whether a defendant clearly requested an attorney during a custodial interrogation, "the determination of what [the defendant] actually said is a question of fact that we review only for clear error. . . . Whether those words are sufficient to invoke the right to counsel is a legal determination that we review *de novo*."

Commonwealth v. Redmond, 264 Va. 321, 327, 568 S.E.2d 695, 698 (2002) (quoting United States v. Uribe-Galindo, 990 F.2d 522, 523 (10th Cir. 1993)).

"If [a] suspect invokes the right to counsel, the interrogation must cease until an attorney has been made available to the suspect or the suspect reinitiates the interrogation." Commonwealth v. Quarles, 283 Va. 214, 220, 720 S.E.2d 84, 87 (2012).

> When a "circuit court did not make any factual findings regarding what [the defendant] actually said because the parties did not dispute the content of his statements to the police" our "appellate consideration of the circuit court's denial of [the defendant's] motion to suppress is restricted to a de novo review of the legal issue whether [his] words, taken in context, were sufficient to invoke his right to counsel."

Zektaw v. Commonwealth, 278 Va. 127, 134-35, 677 S.E.2d 49, 53 (2009) (quoting Hilliard, 270 Va. at 50, 613 S.E.2d at 584).

We find that appellant's statement to Laino, "Let me talk to my lawyer," was an unequivocal invocation of his right to counsel. Therefore, the trial court erred in finding he did not invoke his right to counsel. However, after reviewing the exchange between appellant and Laino, we find that appellant reinitiated further conversation with Laino pursuant to Edwards v. Arizona, 451 U.S. 477 (1981), when the detective attempted to take appellant before the magistrate and charge him.

In Edwards, the Court "extended the principles set forth in Miranda to subsequent interrogation," Commonwealth v. Gregory, 263 Va. 134, 146, 557 S.E.2d 715, 722 (2002), by holding that, after a suspect "expressed his desire to deal with the police only through counsel," interrogation must cease until either his counsel has been made available to him or until "the accused himself initiates further communication, exchanges, or conversation with the police," Edwards, 451 U.S. at 484-85.

To determine the admissibility of a statement under the Edwards rule, we apply a three-part analysis. The first step in this analysis is determining "whether the accused unequivocally invoked his or her right to counsel." Giles v. Commonwealth, 28 Va. App. 527, 532, 507 S.E.2d 102, 105 (1998). The second step is to "determine whether the accused, rather than the authorities, reinitiated further discussions or meetings with the police" after that invocation. Id. The third step is to determine whether, after the accused reinitiated communication with the police, he made a "knowing and intelligent waiver" of the previously invoked right to counsel. Id.; see also North Carolina v. Butler, 441 U.S. 369 (1979).

Because we find appellant's statement, "Let me talk to my lawyer," an unequivocal invocation of his right to counsel, the first step of the Edwards analysis is met.[3]

The second step in the Edwards analysis is whether appellant "reinitiated further discussions" with the police. Giles, 28 Va. App. at 532, 507 S.E.2d at 105. In Rashad v. Commonwealth, 50 Va. App. 528, 651 S.E.2d 407 (2007), after determining that the defendant invoked his right to counsel, this Court "determine[d] *de novo* whether [Rashad] initiated the discussion that resulted in his statements to the police." Id. at 535, 651 S.E.2d at 411. The Court explained:

> "While we doubt that it would be desirable to build a superstructure of legal refinements around the word 'initiate' in this context, there are undoubtedly situations where a bare inquiry by either a defendant or by a police officer should not be held to 'initiate' any conversation or dialogue. There are some inquiries, such as a request for a drink of water or a request to use a telephone that are so routine that they cannot be fairly said to represent a desire on the part of an accused to open up a more generalized discussion relating directly or indirectly to the investigation. Such inquiries or statements, by either an accused or a police officer, relating to routine incidents of the custodial

---

[3] At oral argument, the Commonwealth conceded that statement "appears to be a clear invocation." In his brief and at oral argument, appellant argued that Laino continued to interrogate him and ask questions designed to elicit responses.

- 10 -

> relationship, will not generally 'initiate' a conversation in the sense
> in which that word was used in Edwards."

Id. at 535-36, 651 S.E.2d at 411 (quoting Oregon v. Bradshaw, 462 U.S. 1039, 1045 (1983)).

In determining whether appellant initiated the dialogue with Laino, "we must review the entire exchange between appellant and the [police]." Id. at 536, 651 S.E.2d at 411 (citing Medley v. Commonwealth, 44 Va. App. 19, 37, 602 S.E.2d 411, 417 (2004) (*en banc*)).

> Since appellant does not contest the accuracy of the recorded
> dialogue, our consideration of the trial court's denial of appellant's
> motion to suppress is restricted to a *de novo* review of the legal
> issue of whether appellant's words, taken in context, were
> sufficient to indicate whether appellant initiated further dialogue
> with the officers.

Id. (citing Medley, 44 Va. App. at 30, 602 S.E.2d at 416).

As soon as appellant invoked his right to counsel, Laino made sure that is what he wanted to do. After appellant acknowledged that was his desire, Laino told him, "alright," and advised appellant he was going to take him before the magistrate. Appellant equivocated and told Laino he was not trying to "blow [him] off," to which Laino replied, "I understand." Laino then acknowledged to appellant, "[I]t's your absolute right," however, Laino explained that he (Laino) had a job to do, namely, to take appellant before the magistrate, not question him. Rather than allowing Laino to do that, appellant asked if Laino could "hold on" until appellant gets a lawyer. Laino reiterated he had to file charges against appellant but asked if appellant had a lawyer. Appellant said he had no lawyer, but he wanted to talk to someone named Harold about getting a lawyer. Laino again provided appellant with Miranda warnings, after which Laino facilitated appellant's request to speak with Harold. After the conversation with Harold, Laino again asked appellant. "Having these rights in mind do you wish to talk to me?" Appellant asked what Harold said he should do, and after Laino told appellant what Harold said, appellant

volunteered without being questioned, "I did not attack that woman," "intentionally rob [her]," or "try to hurt her."

After reviewing the totality of the exchange between Laino and appellant, we find that appellant reinitiated contact with Laino when he said he did not want to "blow off" Laino and for Laino to "hold on." Moreover, the resulting exchange after appellant's reinitiation with Laino fails to reflect any interrogation by Laino regarding the crime itself. The entire conversation after appellant reinitiated contact involved appellant's desire to discuss the matter with Harold. After Laino allowed appellant to speak with Harold, appellant asked Laino what Harold said, and Laino responded. Appellant then volunteered that he did not attack, rob or try to hurt Moore despite not being asked a question at the time.

Regarding the third step of the Edwards analysis, namely, whether, after the accused reinitiated communication with the police, he made a "knowing and intelligent waiver" of the previously invoked right to counsel, Giles, 28 Va. App. at 532, 507 S.E.2d at 105, we find that, even though appellant took "exception" to the trial court's rulings, including its acknowledgment that "we have the signed statement and his voluntary statement," appellant failed to include any argument on that issue in his brief.[4]

In Rashad, the defendant contended, *inter alia,* the trial court erred in refusing to suppress statements he made after he invoked his right to counsel. Rashad, 50 Va. App. at 531, 651 S.E.2d at 409. After evaluating the dialogue between Rashad and police officers, the "trial court concluded that, assuming appellant's request for counsel was unequivocal, appellant initiated

---

[4] Although appellant acknowledged in his opening brief, a "subsequent waiver of [one's Miranda] right[s] is not sufficient to make admissible any incriminating statements thereafter obtained, even if investigators have re-Mirandized the accused, *unless the statements are initiated by the defendant and shown to be based on a knowing and intelligent, and voluntary waiver,*" (emphasis added), he failed to include any argument that his subsequent waiver was not made knowingly, intelligently, and voluntarily.

further conversation with the police and that appellant voluntarily waived his right to counsel." Id. at 533, 651 S.E.2d at 410. On appeal, this Court performed a *de novo* review on the second prong of the Edwards analysis and determined that Rashad, not the police, reinitiated contact after Rashad invoked his right to counsel. Id. at 536-38, 651 S.E.2d at 411-12. Regarding the third prong of Edwards, this Court declined to "address it" because it "is not before the Court" in that Rashad "does not argue the third prong of the Edwards analysis." Id. at 535 n.3, 651 S.E.2d at 411 n.3.

Like the defendant in Rashad, appellant failed to present any argument on appeal that his subsequent waiver after reinitiating contact was not knowing and intelligent. Accordingly, we will not address that issue. Id.

Summarizing, we find that appellant initially invoked his right to counsel, then reinitiated contact with Laino when the detective attempted to take appellant before the magistrate and charge him with the crimes. Accordingly, the trial court did not err in refusing to suppress his statements.

DOUBLE JEOPARDY

Appellant argues he was punished twice for the same offense. Appellant also contends the trial court erred in finding that his "prosecution for both aggravated malicious wounding and wounding in the commission of a felony did not violate double jeopardy."

The Commonwealth charged appellant with aggravated malicious wounding in violation of Code § 18.2-51.2, and unlawful wounding in the commission of a felony in violation of Code § 18.2-53. The evidence proved that appellant attacked Moore while armed with a deadly weapon and severely cut her neck requiring her to undergo emergency vascular surgery.

Code § 18.2-53 provides, "If any person, in the commission of, or attempt to commit, a felony, unlawfully shoot, stab, cut or wound another person he shall be guilty of a Class 6 felony."

Code § 18.2-51.2 is entitled "Aggravated Malicious Wounding," and provides,

> If any person maliciously shoots, stabs, cuts or wounds any other person, or by any means causes bodily injury, with the intent to maim, disfigure, disable or kill, he shall be guilty of a Class 2 felony if the victim is thereby severely injured and is caused to suffer permanent and significant physical impairment.

At the pretrial hearing, appellant argued that charging him with aggravated malicious wounding and unlawful wounding, stabbing or cutting while committing a felony violated the Double Jeopardy Clause. The trial court rejected appellant's double jeopardy argument based on this Court's decision in Hall v. Commonwealth, 14 Va. App. 892, 421 S.E.2d 455 (1992) (*en banc*).

In Hall, the defendant stabbed two store employees during a robbery, and one of Hall's accomplices shot one of the stabbed employees in the back. Id. at 895, 421 S.E.2d at 458. Following a bench trial, the court found Hall guilty of unlawfully stabbing during the commission of a felony in violation of Code § 18.2-53, two counts of malicious wounding in violation of Code § 18.2-51, one count of aggravated malicious wounding in violation of Code § 18.2-51.2, and two counts of armed robbery. Id. at 894-95, 421 S.E.2d at 458. Hall contended, *inter alia*, "that double jeopardy protections bar[red] his convictions for [unlawfully] stabbing/cutting [the victims during the commission of a felony] after he was convicted of malicious wounding of these same victims." Id. at 900, 421 S.E.2d at 461. This Court rejected that argument and held that "Hall's punishment for two counts of malicious wounding resulting from the stabbing of two victims and for two counts of stabbing/cutting the same victims during the commission of a felony does not offend the double jeopardy clause because the General

- 14 -

Assembly intended to impose multiple punishments when enacting Code § 18.2-53." Id. at 900-01, 421 S.E.2d at 461.

The decision in Hall remains valid and is dispositive of this assigned error. Moreover, under the Blockburger[5] test, each statute contains an element which the other does not. Aggravated malicious wounding requires malice, an intent to maim, and resulting permanent and significant physical injury, whereas Code § 18.2-53 requires a wounding during the commission of an underlying felony. Therefore, the trial court did not err in denying appellant's double jeopardy argument.

Accordingly, we affirm the convictions.

Affirmed.

---

[5] Blockburger v. United States, 284 U.S. 299, 304 (1932); see Brown v. Ohio, 432 U.S. 161, 166 (1977).